BLANCHARD, J.
The Des Allemands Lumber Company conducted, owned and operated a saw mill plant.
In connection with same, it owned, or leased, or enjoyed the privilege of taking timber from (either or all), large bodies .of swamp lands in the neighborhood and having water connection with the mill through bayous, lakes, canals, etc.
The timber (logs) cut from the swamps, were trailed and pulled, or floated, over these water connections, to the mill and there sawed into lumber.
In June, 1901, the Des Allemands Company entered into a contract with another corporation, known as the Morgan City Timber Co., Limited, by the covenants of which the latter (which will hereafter be referred to as the Morgan Company) undertook to deaden, cut, pull or float, boom and tow all the cypress timber in the swamps, controlled as-aforesaid by the Des Allemands Company, that was accessible from the bayous and lakes bordering said lands, or that should become accessible by means of canals to be constructed by the Des Allemands Company and' at its expense.
The object of this contract was to supply the mill of the Des Allemands Co. with saw logs, and a period of “five years or more” was fixed as the time or duration of the contract.
Later, certain amendments were made in writing to the contract, but not altering its main features as above set forth.
The contract thus made and amended stipulated that the Morgan Company should be-paid in cash, at the time of delivery by it of logs at the mill, $5.50 per M. feet according to the measurement known as “the Doyle rule appearing in the Scribner Lumber and' Log Book.”
.Operations under the contract appear to' have gone on from the summer of 1901 until near the close of April, 1903 — nearly two-years — when the Des Allemands Co. brought a suit against the Morgan Co. the object of which was to have the contract canceled and annulled.
The contention of the plaintiff in that suit was that the Morgan Co. had violated the' contract in such way as to cause serious loss-' and damage to the plaintiff company, and among other things it charged that whereas the contract gave to the plaintiff company the right to designate from what parts of the swamps timber should be cut, and whereas it had given instructions as to where the-cutting should be done, such instructions had not been heeded by the Morgan Company,. *856 and timber had been cut and floated from places in the swamps other than those designated, and the Morgan Company had refused to cut and float from those localities indicated by the plaintiff.
Furthermore, that it had cut down, and was continuing so to do, trees above the circle deadening the same, in spite of its engagement not to do so and in violation of the contract, thereby causing a large loss of timber; that it had cut, and was continuing so to do, the timber so low down from the top of the tree, after it was felled, as,to cause a large loss of timber, in violation of the contract; that in this way it had delivered, and was continuing to deliver, parts of trees instead of the whole trunk of trees suitable for sawing into lumber, thereby causing great loss of timber; that it was obstructing with the branches and unused portions of trees, and with debris, the canals and waterways which the plaintiff had constructed and opened for getting the timber out, thus choking up and rendering useless such canals and waterways; that by such methods plaintiff’s swamps and timber lands were being ruined, etc.; and that already damages to the amount of' $5,000.00 had been inflicted and the aggregate of loss and damage would be largely increased if the Morgan Company were permitted to longer pursue the course complained of.
Lastly, the plaintiff averred that the Morgan Company had forfeited all its rights under the contract; that it had become a mere spoliator of plaintiff’s property; that plaintiff was entitled to have the contract annulled,* and to a writ of injunction to restrain the Morgan Company from further operations thereunder.
The prayer of the petition was for the writ of injunction, for judgment against the Morgan Company declaring the contract violated and canceling the same, and for judgment against it for $5,000.00 damages.
While the present proceeding does not bring before us the merits of this controversy, it is but fair to give the substance of the Morgan Company’s reply to this arraignment, and giving it will conduce to a better understanding of the case.
It answered that in order to meet its obligations under the contract entered into with the Des Allemands Company it made large outlays of money to build and equip pull boats, camp boats and to prepare the necessary plant and outfit for deadening the trees in the swamps, cutting, trailing, pulling and floating the same; that it established camps in the swamps, employed and organized forces of laborers, including men skilled in the operation of the pull boats and other instrumentalities necessary in the work; that in this wise it incurred expenses aggregating twenty-five or thirty thousand dollars; that it entered upon the work it had contracted to do in September, 1901, cutting, first, the timber around the edges of the lakes and bayous where the same could be reached with the pull boats without 'canals — this in order to give the plaintiff the opportunity to cut the canals and accessory waterways contemplated by the contract; that the plaintiff failed in its duty of cutting the canals, though called upon to do so, thus forcing the pull boats to remain idle many days; that plaintiff continually harassed and impeded the defendant in its operations under the contract, with the view of causing the defendant to default thereon and then take advantage of such default; and that failing in its said purpose, and failing to drive defendant to a law suit to protect its rights, it (the plaintiff company) finally resorted to law itself, filing the suit wherein it claimed violation of the contract on part of defendant, and sought its cancellation, and invoked the writ of injunction, which was resorted to not for the purpose of righting a wrong or preventing an injury, but for the purpose of preventing defendant from executing the contract and delivering timber under the same, and earning the large profits which the high water in the swamps, caused by a crevasse on the river front (thus enabling the logs to be floated out instead of pulled out by boats), made certain.
It charged that plaintiff’s object was to save for itself and make this profit, which is figured at forty to fifty thousand dollars; that immediately upon the issuance of the injunction applied for, which had the effect of stopping all operations by defendant and practically dispossessing it, plaintiff company entered upon the land and began to pull and float the timber which defendant had deadened and cut, taking possession of defend *858 ant’s camp, employing its labor, demoralizing its entire force, and thus placing it in a position of inability to meet its obligations under tbe contract.
Defendant denied the acts" of violation of the contract charged by plaintiff; represented the injunction to have been wanton and malicious; and that it (defendant company) had been greatly damaged by the same.
It set forth in detail the items of this damage and estimated the aggregate amount thereof to be largely over one hundred thousand dollars.
For the profits it would have realized on its large contract extending through five years, and involving, as alleged, the taking out of approximating seventy or eighty millions feet of timber, it claimed a lien or privilege on the timber.
It prayed dissolution of the injunction and for judgment for damages and recognition of the privilege claimed.
The injunction applied for by the Des Allemands Company was, upon the sworn allegations of its petition, granted on a bond of seven thousand dollars.
Following the service of the writ, the Morgan Company ruled the plaintiff to show cause why the injunction bond should not be increased, alleging its insufficiency.
Pending the trial of the rule, the Des Allemands Company asked that an order be made turning over to it the 3,300 logs that were cut and down and in boom at the time its suit was filed, in order that the same might be sawed into lumber. It was represented that unless this were done, the logs were in danger of being lost. It was further represented that the logs were in the canal and approaches to the mill, blocked the same and interfered with the logging of the mill. It was asked that the logs be scaled and measured and then that plaintiff be permitted to saw up the same and market the lumber on depositing into court the contract price with the Morgan Company of $5.50 per M. feet for delivery at the mill.
The respondent Judge, in his return to the rule msi says plaintiff’s counsel, in asking for the order, stated it was necessary to preserve the property, or its value.
The Morgan Company resisted the order, but urged that if the court acted at all, it should so act as to preserve the status existing at the time of service of the injunction, and, take possession, under judicial sequestration, of all the property of which defendant claimed possession under its contract with plaintiff.
The Judge further states that counsel for plaintiff, arguing for the order to saw up the logs, contended it was in the nature of a judicial sequestration. Having, he says, already had such action — to wit; — judicial sequestration — in contemplation, he asked counsel for both litigants whether, in their opinion, it was a proper case for judicial sequestration and both answered “yes, to preserve the property.” This is denied by counsel for the Des Allemands Co.
Being satisfied, the Judge says, from the testimony then already taken in the rule to-increase the injunction bond that 'it was a case where judicial sequestration was justified, he ordered the writ to issue.
The result of the trial of the rule to increase the bond was that it was ordered increased from seven to thirty thousand dollars, and the Judge says that, if the sequestration had not been ordered, as above, he would have felt constrained, under the evidence, to have increased the injunction bond to a much larger amount.
He concluded, he said, that the property-being in charge of the court, defendant’s, damage would be covered by a bond of thirty thousand dollars.
The increased bond was given. The sheriff executed the writ of judicial sequestration by taking into his custody the logs cut and down and the twenty odd thousand trees, deadened and ready to be cut.
The Des Allemands Company then applied to bond the sequestration, and the court ruled the Morgan Company to show cause why the same should not be dissolved on bond.
Pending this rule the Des Allemands Company moved for an appeal from the order directing the judicial sequestration of the property. On consideration, after argument, the appeal was denied.
The application to dissolve the sequestration on bond was granted.
From this order to bond, the Morgan Company asked for a suspensive appeal, which was allowed. Following this, and after the-bond for the appeal had been filed, the Des Allemands Company filed a motion to quash *860 the original order for judicial sequestration. After trial this motion was denied.
Whereupon application was made by the Des Allemands Co. to this Court for its writs of certiorari, mandamus and prohibition. Its right .to these writs and to relief under them is the case now before us.
The main purposes plaintiff seeks by these writs to accomplish are, (1) to have the judicial sequestration quashed; (2) if this be not done, then to have the amount of the bond for the release of the property sequestered reduced; (3) to prohibit the trial judge from allowing the Morgan Company a suspensive appeal from the order directing dissolution of the judicial sequestration on bond; ■(4) to compel the trial judge to allow it (the Des Allemands Company; an appeal from the ■order directing the judicial sequestration of the property.
The rule nisi having been granted, the respondent judge answered giving the grounds for his action and the reason therefor.
Ruling — We are of the opinion, under the facts as developed on the trial of the rules taken in the case in respect to the preliminary orders sought, that the respondent judge was justified in ordering the judicial sequestration of the property. See Schwan v. Schwan, 52 La. Ann. 1183, 27 South. 678.
The writ of injunction which the Des Allemands Company had sued out was, besides the legitimate purpose it was intended to subserve, evidently being used by plaintiff for another purpose and one not contemplated by the trial judge when he granted it, viz.:— that under its cover plaintiff was possessing itself of the fruits of defendant’s expenditure of money and labor in the swamps. See State ex rel. Dowdell v. Judge, 105 La. 167, 29 South. 719.
And to have allowed the plaintiff company a suspensive appeal from the order directing the judicial sequestration would have enabled it to do the very thing to prevent, which it was deemed advisable to take the property into the custody of the law.
The judicial sequestration did not have the effect of changing the possession of the property. Its only effect was to preserve the status of affairs existing at the time the plaintiff company wrought a change and brought matters to a standstill by its injunction. It was an interlocutory order made, pending the litigation, and could work no irreparable injury to plaintiff company. It was, therefore, not appealable.
We are of the opinion that the judicial sequestration, like the ordinary sequestration, may be dissolved on bond. State ex rel. Taylor v. Judge, 26 La. Ann. 65.
Plaintiff company had the right to have the writ set aside and the property which had been taken into custody under the same delivered to it upon furnishing bond and security as the law directs. Quoad the sequestration the Des Allemands Company was defendant, and it had the first right to bond the sequestration. Code Prac. art. 279.
The bond, in such case, takes the place of the property and under its obligation the rights of the parties in interest are conserved.
The right of property and, therefore, the ultimate right of possession of the logs and deadened trees in the swamps was in the plaintiff company. The right of defendant company was one of temporary possession under the contract which gave it certain privileges and moneyed claims, secured, perhaps, by a lien, upon the property, which claims and liens might be and are fully protected by the bond which plaintiff is to give under the order dissolving the sequestration on bond.
This being the case, the interlocutory order dissolving the writ on bond is not one that can possibly work the Morgan Company irreparable injury and, therefore, it was not such an order as may be suspensively appealed from.
In this respect the case at bar comes within the rule laid down in State ex rel. Roth v. Judge, 37 La. Ann. 846. See, also, Eltringham v. Clarke, 49 La. Ann. 340, 21 South. 547, where, on page 342, 49 La. Ann., and page 548, 21 South., the Court said:— “The character of the right sought to be protected by the sequestration determines whether the order dissolving the seizure is appealable. Where the demand of plaintiff is simply for debt secured by privilege, and his wi'it of sequestration is dissolved by the substitution of a bond for the property, no appeal lies, the bond affording him complete protection.”
The complaint of the Des Allemands Company against the action of respondent judge in allowing the order of dissolution on bon'd *862 to be appealed from suspensively is well taken and must be sustained.
And we are further of the opinion that its complaint against the amount of the release bond as fixed by the respondent judge is well taken. This amount is $90,000.00. It is more than four times the estimate of value fixed upon the property by the sheriff’s inventory forming part of his return on the writ of sequestration.
The evidence in the record as to the value of the property shows the sheriff’s valuation far too small, but yet does not, we think, entirely justify the very large bond required by the judge, especially in view of the thirty thousand dollar injunction bond plaintiff company was compelled to give.
The amount of the bond as fixed by our learned brother of the District Court is held to be excessive — not the exercise of that wise discretion required by the law — and, we think, under its supervisory powers, now that the case is here on complaint as to that and other rulings, it is both competent and proper for this Court, considering the evidence Of value of the property brought up as part of the record, to direct the respondent judge to reduce the amount of the release bond and to fix it at a figure deemed more reasonable, to-wit: — $50,000.00.
For the reasons assigned it is ordered that the writs applied for be sustained and perpetuated to the extent of disallowing and prohibiting the suspensive appeal granted by the respondent judge to the Morgan City Timber Company, Limited, from the order or judgment authorizing the Des Allemands Lumber Company, Limited, to dissolve the judicial sequestration on bond; and to the further extent of directing the respondent judge to reduce the release bond the said Des Allemands Lumber Company, Limited, is required to give, in order to secure the dissolution of the sequestration, from ninety thousand dollars to fifty thousand dollars.
It is further ordered that in all other respects and for all the other purposes for which applied, the said writs are denied and the rule nisi discharged.
See dissenting opinion of MONROE, J., 34 South. 807.
PROVOSTY, J., joins in this dissent.